# EXHIBIT 73

(Multicurrency—Cross Border)

# ISDA®

International Swap Dealers Association, Inc.

# MASTER AGREEMENT

dated as of .....February..2,...1996

THE CHASE MANHATTAN BANK
(NATIONAL ASSOCIATION).......................... and ...WESTERNBANK..PUERTO..RICO...........................

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

1. **Interpretation**

(a) *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b) *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purpose of the relevant Transaction.

(c) *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

2. **Obligations**

(a) *General Conditions.*

  (i) Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

  (ii) Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency. Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

  (iii) Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

Copyright © 1992 by International Swap Dealers Association, Inc.

value of that which was (or would have been) required to be delivered as of the originally scheduled date for delivery, in each case together with (to the extent permitted under applicable law) interest, in the currency of such amounts, from (and including) the date such amounts or obligations were or would have been required to have been paid or performed to (but excluding) such Early Termination Date, at the Applicable Rate. Such amounts of interest will be calculated on the basis of daily compounding and the actual number of days elapsed. The fair market value of any obligation referred to in clause (b) above shall be reasonably determined by the party obliged to make the determination under Section 6(e) or, if each party is so obliged, it shall be the average of the Termination Currency Equivalents of the fair market values reasonably determined by both parties.

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

THE CHASE MANHATTAN BANK
(NATIONAL ASSOCIATION)
(Name of Party)

By: ........................
Name: FERNANDO KRABELL
Title: VICE PRESIDENT
Date: MARCH 1, 1996

WESTERNBANK PUERTO RICO
(Name of Party)

By: ........................
Name: Frank C. Stipes
Title: President & Chief Executive Officer
Date: March 1, 1996

By: Hiram Mesonero
Name: HIRAM MESONERO
Title: Assistant VICE PRESIDENT
Date: March 1, 1996

18

ISDA® 1992

SCHEDULE

to the

Master Agreement

dated as of February 2, 1996

between

The Chase Manhattan Bank (National Association) ("Chase")

and

Westernbank Puerto Rico ("Counterparty")

Part 1. Termination Provisions.

(a)  "Specified Entity" means in relation to Chase for the purpose of:-

Section 5(a)(v), Any Affiliate of Chase
Section 5(a)(vi), Not applicable
Section 5(a)(vii), Not applicable
Section 5(b)(iv), Not applicable

and in relation to Counterparty for the purpose of:

Section 5(a)(v), Any Affiliate of Counterparty
Section 5(a)(vi), Not applicable
Section 5(a)(vii), Not applicable
Section 5(b)(iv), Not applicable

(b)  "Specified Transaction" will have the meaning specified in Section 14 of this Agreement.

(c)  The "Cross Default" provisions of Section 5(a)(vi) will apply to both parties, and for the purposes thereof (i) there shall be added to the aggregate amount referred to in Section 5(a)(vi)(1) and (2) all amounts due and payable by such party or its Credit Support Provider or Specified Entity (if applicable) remaining unpaid under or in connection with any interest rate or currency exchange agreement, rate cap agreement, rate floor agreement, rate collar agreement, forward rate agreement, commodity price protection transaction or equity index swap or option (however denominated); (ii) amounts which have become or have become capable of being declared due and payable as a result of an event similar to Illegality or any Change in Tax Law or the application thereof shall not be included in the aggregate amount referred to in Section 5(a)(vi)(1); and (iii) amounts which are not paid at maturity solely as a result of an event similar to Illegality shall not be included in the aggregate amount referred to in in 5(a)(vi)(2).

"Specified Indebtedness" means any obligation (whether present or future, contingent or otherwise, as principal or surety or otherwise) in respect of borrowed money (other than indebtedness in respect of deposits received), including interest on any such obligation and including any duty to provide security with respect to such obligation.

19

"Threshold Amount" means, with respect to Counterparty or its Credit Support Provider or Specified Entity (if any), $1,000,000, and with respect to Chase, 5% of the stockholders' equity (including retained earnings) of such party, Credit Support Provider or Specified Entity, determined as of the end of the most recent quarterly period for which financial statements have been prepared (or if quarterly statements are not prepared, the most recent period of other length for which financial statements have been prepared).

(d) The "Credit Event Upon Merger" provisions of Section 5(b)(iv) will apply to both parties.

(e) The "Automatic Early Termination" provisions of Section 6(a) will not apply to either party.

(f) Payments on Early Termination. For the purpose of Section 6(e) of this Agreement: -

    (i) Loss will apply.

    (ii) The Second Method will apply.

(g) "Termination Currency" means United States Dollars.

(h) Additional Termination Events will apply. The following shall constitute Additional Termination Events: -

    (i) Merger Causing Conflict with Policies. A party ("X") consolidates or amalgamates with, or merges into, or transfers all or substantially all its assets to, another entity ("Y") and such action does not constitute a "Merger Without Assumption" described in Section 5(a)(viii) of this Agreement but any policy in effect at the time (including any policy relating to lending or credit limits but excluding any other credit policy) of the other party to this Agreement would not permit such other party to enter into a Transaction or Transactions with Y on the terms (other than applicable rates) of the Transactions then in effect hereunder (except that no such policy shall be considered for purposes of this paragraph if it would also not have permitted such other party to enter into those Transactions with X immediately prior to the consolidation, amalgamation or transfer in question). For purposes of this Termination Event, the Affected Party is the entity designated as Y above.

    (ii) Impossibility. Due to the occurrence of a natural or man-made disaster, armed conflict, act of terrorism, riot, labor disruption or any other circumstance beyond its control after the date on which a Transaction is entered into, it becomes impossible (other than as a result of its own misconduct) for such a party (which will be the Affected Party):

        (1) to perform any absolute or contingent obligation, to make a payment or delivery or to receive a payment or delivery in respect of such Transaction or to comply with any other material provision of this Agreement relating to such Transaction; or

        (2) to perform, or for any Credit Support Provider of such party to perform, any contingent or other obligation which the party (or such Credit Support Provider) has under any Credit Support Document relating to such Transaction.

Part 2. <u>Tax Representations</u>.

(a) <u>Payer Representations</u>. For the purpose of Section 3(e) of this Agreement, both parties will make the following representation: -

It is not required by any applicable law, as modified by the practice of any relevant governmental revenue authority, of any Relevant Jurisdiction to make any deduction or withholding for or on account of any Tax from any payment (other than interest under Section 2(e), 6(d)(ii) or 6(e) of this Agreement) to be made by it to the other party under this Agreement. In making this representation, it may rely on (i) the accuracy of any representations made by the other party pursuant to Section 3(f) of this Agreement, (ii) the satisfaction of the agreement contained in Section 4(a)(i) or 4(a)(iii) of this Agreement and the accuracy and effectiveness of any document provided by the other party pursuant to Section 4(a)(i) or 4(a)(iii) of this Agreement and (iii) the satisfaction of the agreement of the other party contained in Section 4(d) of this Agreement, provided that it shall not be a breach of this representation where reliance is placed on clause (ii) and the other party does not deliver a form or document under Section 4(a)(iii) by reason of material prejudice to its legal or commercial position.

Part 3. <u>Documents to be delivered</u>.

For the purpose of Sections 4(a)(i) and (ii) of this Agreement each party agrees to deliver the following documents, as applicable:

(a) Tax forms, documents or certificates to be delivered are: -

   (i) Each party shall, as soon as practicable after demand, deliver to the other party any form or document reasonably requested by the other party which is required to enable such other party to make payments hereunder without withholding for or on account of Taxes or with such withholding at a reduced rate.

(b) Other documents to be delivered by each party concurrently with the execution and delivery of this Agreement, which are covered by the Section 3(d) representation, are: -

   (i) Evidence of the incumbency and specimen signature of each person executing this Agreement or any other document on its behalf in connection with this Agreement.

   (ii) Copies of the resolutions of the board of directors of the party, certified by the secretary or an assistant secretary of the party, authorizing the execution and delivery of this Agreement and each Confirmation by the party.

   (iii) The Credit Support Document.

(c) With respect to any Transaction, each party shall furnish to the other party, upon request of the other party, evidence of the specimen signature and incumbency of each person who is executing the Confirmation with respect to such Transaction on such party's behalf, which documents are covered by the Section 3(d) representation.

21

Part 4. Miscellaneous.

(a) Addresses for Notices. For the purposes of Section 12(a) of this Agreement:-

Address for notices or communications to Chase: Address specified in Confirmation with copy to The Chase Manhattan Bank (National Association), 4 Chase Metrotech Center, Brooklyn, New York 11245, Attention: CMB Swaps Operations Officer, 15th Floor; Telex No.: 62910; Answerback: CMB UW; Facsimile: (718) 242-6157, and, unless notice relates solely to change in address, account number or Process Agent, copy to The Chase Manhattan Bank (National Association), 25th Floor, 1 Chase Manhattan Plaza, N.Y., N.Y. 10081, Attention: General Counsel, Telex No.: 6716194; Answerback: CMBLEGUW; Facsimile No. 212 552-5378

Address for notices or communications to Counterparty:
Address: Calle Mendez Vigo Oeste #19, Mayaguez, Puerto Rico 00680
Attention: Mr. Freddy Maldonado
Telephone No.: 809-834-8000 x2302
Facsimile No.: 809-834-0404

(b) Process Agent. For the purpose of Section 13(c) of this Agreement: - Not applicable.

(c) Offices. The provisions of Section 10(a) will apply to this Agreement.

(d) Multibranch Party. For the purposes of Section 10(c) of this Agreement:- Chase is a Multibranch Party and may act through any branch, office or agency specified in a Confirmation. Counterparty is not a Multibranch Party.

(e) Calculation Agent. The Calculation Agent is Chase, unless otherwise specified in a Confirmation in relation to the relevant Transaction.

(f) Credit Support Document. Credit Support Document means in relation to Counterparty: The Credit Support Annex attached hereto.

(g) Credit Support Provider. Credit Support Provider means in relation to Counterparty, Not applicable.

(h) GOVERNING LAW. THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT REFERENCE TO CHOICE OF LAW DOCTRINE.

(i) Netting of Payments. Section 2(c) of this Agreement will apply to all Transactions.

(j) "Affiliate" will have the meaning specified in Section 14 of this Agreement.

(k) Each Confirmation shall be substantially in the form of the applicable confirmation included as an Exhibit in the 1991 ISDA Definitions (the "1991 Definitions"), as published by the International Swaps and Derivatives Association, Inc. or in such other form as the parties may agree.

22

Part 5. Other Provisions.

(a) <u>Affected Parties in Termination Events</u>.

    For purposes of Section 6(e) of this Agreement, both parties shall be deemed to be Affected Parties in connection with the Termination Events described in Sections 5(b)(i) and 5(b)(ii), so that payments on Early Termination shall be calculated as provided in Section 6(e)(ii)(2).

(b)   <u>Modifications to the Agreement</u>

    (i)   Section 3(c) of the Agreement is modified by deleting the words "or, to its knowledge, threatened" in the first line thereof.

    (ii)   Section 3 is modified by adding the following paragraphs thereto:

        (g)   It is, in the case of Chase, a national banking association duly organized under the laws of the United States, and in the case of Counterparty, a bank duly organized under the laws of Puerto Rico.

        (h)   It is an "eligible swap participant" as such term is defined in Part 35 of Chapter I of Title 17 of the Code of Federal Regulations, promulgated by the Commodity Futures Trading Commission, entitled "Exemption of Swap Agreements."

    (iii)   Each party will be deemed to represent to the other party on the date on which it enters into a Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for that Transaction):

        (a)   Non-Reliance. It has made its own independent decision to enter into that Transaction, is acting at arm's length for its own account, and is not relying on any communication (written or oral) of the other party as a recommendation or investment advice regarding that Transaction.

        (b)   Evaluation and Understanding. It has the capability to evaluate and understand (on its own behalf or through independent professional advice), and does understand, the terms, conditions and risks of that Transaction and is willing to accept those terms and conditions and to assume (financially and otherwise) those risks.

    (iv)   Section 4 is modified by adding the following paragraph (f) thereto:

        (f)   It will maintain in its official books and records the original or a copy of this Agreement and the evidence of authority described in item (b) of Part 3 of the Schedule.

    (v)   Section 5(a)(v) of the Agreement is modified by adding the following prior to the semicolon at the end thereof:

        provided that, in the case of clauses (1) and (2) above, any such event shall not constitute an Event of Default under this Agreement if such event shall not have continued in effect for three Local Business Days after notice thereof to the applicable party to this Agreement in accordance with Section 12 of this Agreement, which notice may be given prior to the expiration of any grace period referred to in such clauses (1) and (2)

23

(vi) Section 6 is modified by adding the following paragraph (f) thereto:

(f) Set-off. Any amount (the 'Early Termination Amount') payable to one party (the Payee) by the other party (the Payer) under Section 6(e), in circumstances where there is a Defaulting Party or one Affected Party in the case where a Termination Event under Section 5(b)(iv) has occurred, will, at the option of the party ('X') other than the Defaulting Party or the Affected Party (and without prior notice to the Defaulting Party or the Affected Party), be reduced by its set-off against any amount(s) (the 'Other Agreement Amount') payable (whether at such time or in the future or upon the occurrence of a contingency) by the Payee to the Payer (irrespective of the currency, place of payment or booking office of the obligation) under any other agreement(s) between the Payee and the Payer or instrument(s) or undertaking(s) issued or executed by one party to, or in favor of, the other party (and the Other Agreement Amount will be discharged promptly and in all respects to the extent it is so set-off). X will give notice to the other party of any set-off effected under this Section 6(f).

For this purpose, either the Early Termination Amount or the Other Agreement Amount (or the relevant portion of such amounts) may be converted by X into the currency in which the other is denominated at the rate of exchange at which such party would be able, acting in a reasonable manner and in good faith, to purchase the relevant amount of such currency.

If an obligation is unascertained, X may in good faith estimate that obligation and set-off in respect of the estimate, subject to the relevant party accounting to the other when the obligation is ascertained.

Nothing in this Section 6(f) shall be effective to create a charge or other security interest. This Section 6(f) shall be without prejudice and in addition to any right of set-off, combination of accounts, lien or other right to which any party is at any time otherwise entitled (whether by operation of law, contract or otherwise).

(vii) Consent to Telephone Recording. Each party hereby agrees that the other party or its agents may electronically record all telephone conversations between officers, employees or Affiliates of the consenting party and the officers, employees or Affiliates of the other party who quote on, agree to or otherwise discuss terms of interest exchange agreements, currency exchange agreements, caps, collars, floors and other rate or price protection transactions on behalf of the party. Any such recordings will be used only in connection with any misunderstanding or question arising with respect to any transaction discussed over the telephone by or on behalf of the parties. Each party further agrees to notify its officers, employees and Affiliates that telephone conversations with such persons acting on behalf of the other party will be recorded.

(viii) The definition of "Affected Transactions" in Section 14 of the Agreement is modified by adding the word "Impossibility," immediately prior to the word "Illegality" in the first line thereof.

(d) Modifications to the Definitions. For purposes of any Transaction which is identified as or subject to an Option in a related Confirmation to which the 1991 Definitions are made applicable, the Definitions are hereby amended by adding the following after the last sentence of Section 8.4(b) thereof:

"Any notice which becomes effective after 2:00 p.m., local time in the location of the Seller of the Option (or such other time as may be specified in a Confirmation) on any day shall be deemed to have become effective on the next following day."

AR/65434

24

(Bilateral Form) (ISDA Agreements Subject to New York Law Only)



# ISDA®
International Swaps and Derivatives Association, Inc.

# CREDIT SUPPORT ANNEX

to the Schedule to the

Master Agreement
..........................................

dated as of ..February.2,.1996

between

THE CHASE MANHATTAN BANK
(NATIONAL ASSOCIATION) ........ and .WESTERNBANK.PUERTO.RICO...........

("Party A")  ("Party B")

This Annex supplements, forms part of, and is subject to, the above-referenced Agreement, is part of its Schedule and is a Credit Support Document under this Agreement with respect to each party.

Accordingly, the parties agree as follows:—

## Paragraph 1. Interpretation

(a) *Definitions and Inconsistency.* Capitalized terms not otherwise defined herein or elsewhere in this Agreement have the meanings specified pursuant to Paragraph 12, and all references in this Annex to Paragraphs are to Paragraphs of this Annex. In the event of any inconsistency between this Annex and the other provisions of this Schedule, this Annex will prevail, and in the event of any inconsistency between Paragraph 13 and the other provisions of this Annex, Paragraph 13 will prevail.

(b) *Secured Party and Pledgor.* All references in this Annex to the "Secured Party" will be to either party when acting in that capacity and all corresponding references to the "Pledgor" will be to the other party when acting in that capacity; *provided, however,* that if Other Posted Support is held by a party to this Annex, all references herein to that party as the Secured Party with respect to that Other Posted Support will be to that party as the beneficiary thereof and will not subject that support or that party as the beneficiary thereof to provisions of law generally relating to security interests and secured parties.

## Paragraph 2. Security Interest

Each party, as the Pledgor, hereby pledges to the other party, as the Secured Party, as security for its Obligations, and grants to the Secured Party a first priority continuing security interest in, lien on and right of Set-off against all Posted Collateral Transferred to or received by the Secured Party hereunder. Upon the Transfer by the Secured Party to the Pledgor of Posted Collateral, the security interest and lien granted hereunder on that Posted Collateral will be released immediately and, to the extent possible, without any further action by either party.

Copyright © 1994 by International Swaps and Derivatives Association, Inc.

Paragraph 13.  Elections and Variables

(a) Security Interest for "Obligations." The term "Obligations" has the meaning specified in Paragraph 12.

(b) Credit Support Obligations.

    (i) Delivery Amount, Return Amount and Credit Support Amount.

        (A) "Delivery Amount" has the meaning specified in Paragraph 3(a).

        (B) "Return Amount" has the meaning specified in Paragraph 3(b).

        (C) "Credit Support Amount" has the meaning specified in Paragraph 3.

    (ii) Eligible Collateral. The following items will qualify as "Eligible Collateral" for Party B:

|  |  | Eligible Collateral | Valuation Percentage |
|---|---|---|---|
| (A) | Cash | [X] | 100% |
| (B) | negotiable debt obligations issued by the U.S. Treasury Department having an original maturity at issuance of not more than one year ("Treasury Bills") | [X] | 100% |
| (C) | negotiable debt obligations issued by the U.S. Treasury Department having an original maturity at issuance of more than one year but not more than 10 years ("Treasury Notes") | [ ] | [ %] |
| (D) | negotiable debt obligations issued by the U.S. Treasury Department having an original maturity at issuance of more than 10 years ("Treasury Bonds") | [ ] | [ %] |
| (E) | certificates of deposits issued by banks that are acceptable to Party A in its sole discretion | [X] | 100% |

11

|   |   |   |
|---|---|---|
| (F) U.S. Government Agency Securities | [X] | 100% |

"U.S. Government Agency Securities" mean negotiable debt obligations in book-entry form issued by the U.S. Government National Mortgage Association, the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation; provided, however, that any U.S. Government Agency Security will qualify as "Eligible Collateral: only in it meets all of the following requirements:

    (1) it is the direct unconditional obligation of the issuer,

    (2) it bears interest at a non-variable fixed rate throughout its life until maturity,

    (3) it has a non-variable fixed maturity and cannot be called for redemption by its issuer before its maturity and cannot be put to its issuer for redemption before its maturity, and

    (4) it is not, in the opinion of the Secured Party, an obligation or security which is a collateralised mortgage obligation or a real estate mortgage investment conduit or which is payable solely from principal of, or solely from interest on, any underlying collateral or which is a structured debt obligation or which is not a debt obligation.

(iii) Other Eligible Support. The following items will qualify as "Other Eligible Support" for Party B: None.

(iv) Thresholds.

    (A) "Independent Amount" means with respect to Party B: (i) for each Transaction with a Term of less than three years, an amount equal to 0.25% of the initial Calculation Amount and (ii) for each Transaction with a Term of three years or more an amount equal to 0.40% of the initial Calculation.

    (B) "Threshold" means with respect to Party B, as of any Valuation Date, $-0-.

    (C) "Minimum Transfer Amount" means with respect to Party B, as of any Valuation Date, $10,000, provided that the Minimum Transfer Amount shall not be applicable to the Transfer of the Independent Amount.

    (D) Rounding. The Delivery Amount will be rounded up and the Return Amount will be rounded down, in each case, to the nearest integral multiple of $1000.

(c) Valuation and Timing.

    (i) "Valuation Agent" means, for all purposes, the Secured Party.

    (ii) "Valuation Date" means each Local Business Day.

    (iii) "Valuation Time" means the close of business on the Local Business Day before the Valuation Date or date of calculation, as applicable; provided that the calculations of Value and Exposure will be made as of approximately the same time on the same date.

    (iv) "Notification Time" means 1:00 p.m., New York time, on a Local Business Day.

FROM JPMORGAN CHASE 41FL                (WED) 4.27.05 10:48/ST. 10:36/NO. 4863964440 P 14

(d) Conditions Precedent and Secured Party's Rights and Remedies. The following Termination Event(s) will be a "Specified Condition" for Party B (Party B being the Affected Party for such purposes):

| | |
|---|---|
| Illegality | [X] |
| Tax Event | [ ] |
| Tax Event Upon Merger | [ ] |
| Credit Event Upon Merger | [X] |
| Additional Termination Event(s): | |

(e) Substitution.

    (i) "Substitution Date" has the meaning specified in Paragraph 4(d)(ii).

    (ii) Consent. If specified here as applicable, then the Pledgor must obtain the Secured Party's consent for any substitution pursuant to Paragraph 4(d): Applicable.

(f) Dispute Resolution.

    (i) "Resolution Time" means 1:00 p.m., New York time, on the Local Business Day following the date on which the notice is given that gives rise to a dispute under Paragraph 5.

    (ii) Value. For the purpose of Paragraphs 5(i)(C) and 5(ii), the Value of Posted Credit Support will be calculated as follows: (i) in the case of Cash, the face amount thereof; and (ii) in the case of securities, the Secured Party, acting as Valuation Agent, shall obtain quotations from three market-makers in the relevant market (which shall not be affiliates of Party A) with regard to the bid price of such securities. The value of the securities for purposes of this subparagraph shall be the arithmetic mean of such quotations.

    (iii) Alternative. The provisions of Paragraph 5 will apply.

(g) Holding and Using Posted Collateral.

    (i) Eligibility to Hold Posted Collateral; Custodians. Party A and its Custodian will be entitled to hold Posted Collateral pursuant to Paragraph 6(b); provided that the following conditions applicable to it are satisfied:

        (1) Party A: Party A is not a Defaulting Party.

        (2) Party A shall hold Posted Collateral only through a Custodian at any time as Party A shall fail to maintain Debt Ratings of at least Baa from Moody's and BBB from S&P.

        (3) Any Custodian shall be a commercial bank or trust company organized under the laws of the United States or a political subdivision thereof having assets of at least $10 billion and Debt Ratings of at least Baa1 from Moody's and BBB+ from S&P (a "Qualified Institution").

        (4) Posted Collateral may be moved from one Custodian that is a Qualified Institution to another upon reasonable advance notice to the Pledgor.

Initially, Party A will act as its own Custodian.

13

(ii) Use of Posted Collateral. The provisions of Paragraph 6(c)(i) will apply to Party A.

(h) Distributions and Interest Amount.

(i) Interest Rate. The "Interest Rate" will be the overnight offered rate for deposits in U.S. Dollars which appears on Page 4833 on the Dow Jones Telerate Service (or such other page as may replace that page on that service, or such other service as may be nominated as the information vendor, for the purpose of displaying rates or prices comparable to those on Page 4833) as of 11:00 a.m., London time, on such day.

(ii) Transfer of Interest Amount. The Transfer of the Interest Amount will be made on the last Local Business Day of each calendar month and on any Local Business Day that Posted Collateral in the form of Cash is Transferred to the Pledgor pursuant to Paragraph 3(b).

(iii) Alternative to Interest Amount. Not Applicable.

(i) Additional Representations. None.

(j) Other Eligible Support and Other Posted Support. None.

(k) Demands and Notices.

All demands, specifications and notices under this Annex will be made pursuant to the Notices Section of this Agreement.

(l) Addresses for Transfers.

Party A: In the case of Cash, Account No. 001-0-962009, ABA No. 021000021 in favor of The Chase Manhattan Bank, N.A. (London Branch) and in the case of non-Cash items, ABA No. 021000021, Chase NYC/CUST G05624/Chase Manhattan GRM.

(m) Other Provisions.

(i) As used in this Annex:

"Debt Rating" means the lower of the ratings issued or maintained by Moody's and S&P with respect to its long-term, unsecured, unsubordinated deposits, in the case of Party A, and its long term, unsecured, unsubordinated deposits, in the case of Party B.

"Moody's" means Moody's Investors Service, Inc. and its successors.

"S&P" means Standard and Poor's Ratings Group (a division of McGraw Hill Inc.) and its successors.

(ii) Paragraph 7(i) is hereby amended by deleting therefrom, the clause "and that failure continues for two Local Business Days after notice of that failure is given to that party."

14

(iv) <u>Modification to Paragraph 1</u>: The following subparagraph (b) is substituted for subparagraph (b) of this Annex:

> (b) Secured Party and Pledgor. All references in this Annex to the "Secured Party" will be to Party A and all corresponding references to the "Pledgor" will be to Party B; provided, however, that if Other Posted Support is held by a party to this Annex, all references herein to that party as the Secured Party with respect to that Other Posted Support will be to that party as the beneficiary thereof and will not subject that support or that party as the beneficiary thereof to provisions of law generally relating to security interests and secured parties.

(v) <u>Modification to Paragraph 2</u>: The following Paragraph 2 is substituted for Paragraph 2 of this Annex:

> Paragraph 2. Security Interest. The Pledgor hereby pledges to the Secured Party, as security for its Obligations, and grants to the Secured Party a first priority continuing security interest in, lien on and right of Set-Off against all Posted Collateral Transferred to or received by the Secured Party hereunder. Upon the Transfer by the Secured Party to the Pledgor of Posted Collateral, the security interest and lien granted hereunder on that Posted Collateral will be released immediately and, to the extent possible, without any further action by either party.

(vi) <u>Modification to Paragraph 9</u>: The following first clause of Paragraph 9 is substituted for the first clause of Paragraph 9 of this Annex:

> Paragraph 9. Representations. The Pledgor represents to the Secured Party (which representations will be deemed to be repeated as of each date on which it Transfers Eligible collateral) that:

(vii) <u>Modifications to Paragraph 12</u>: The following definitions of "Pledgor" and "Secured Party" are substituted for the definitions of those terms contained in Paragraph 12 of this Annex:

> "Pledgor" means Party B, when that party (i) receives a demand for or is required to Transfer Eligible Credit Support under Paragraph 3(a) or (ii) has Transferred Eligible Credit Support under Paragraph 3(a).

> "Secured Party" means Party A, when that party (i) makes a demand for or is entitled to receive Eligible Credit Support under Paragraph 3(a) or (ii) holds or is deemed to hold Posted Credit Support.

(viii) Notwithstanding anything to the contrary in this Annex:

    (a) The "Events of Default" specified in Paragraph 7 will not apply to the Secured Party; and

    (b) This Annex is a Credit Support Document under this Agreement only with respect to the Pledgor.

65453

15

# AMENDMENT AGREEMENT

This AMENDMENT AGREEMENT is made as of March 1, 2000, between THE CHASE MANHATTAN BANK ("Chase") and WESTERNBANK PUERTO RICO ("Counterparty").

WHEREAS, Chase and the Counterparty are parties to a Master Agreement dated as of February 2, 1996 (as supplemented and/or amended prior to the date hereof, the "Master Agreement") which includes a Credit Support Annex (the "Credit Support Annex") (which supplements, forms part of, and is subject to, the Master Agreement); and

WHEREAS, Chase and the Counterparty desire to amend certain provisions of the Credit Support Annex.

NOW THEREFORE, in consideration of the mutual agreements herein contained, Chase and the Counterparty hereby agree as follows:

1. **Amendment**. Effective as of the date hereof, the Credit Support Annex shall be amended as follows:

   (a) Paragraph 13(h)(i) of the Credit Support Annex is hereby amended to read in its entirety as follows:

   (i) Interest Rate. "Interest Rate" means, for any day, the rate set forth for that day opposite the caption "Federal Funds (Effective)" in the weekly statistical release designated "H.15(519)", or any successor publication, published by the Board of Governors of the Federal Reserve System, minus 1/8%.

2. **Miscellaneous.**

   (a) This Amendment Agreement may be executed in counterparts, each of which will be deemed an original.

   (b) All references in the Master Agreement to the "Agreement" shall refer to the Agreement as defined therein, as amended by this Amendment Agreement.

   (c) All capitalized terms used herein which are not defined herein shall have the meanings set forth therefor in the Master Agreement.

   (d) Except as specifically amended hereby, the Master Agreement shall continue in full force and effect.

252451:v01

(e) THIS AMENDMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO CHOICE OF LAW DOCTRINE.

(f) The headings used in this Amendment Agreement are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting this Amendment Agreement.

IN WITNESS WHEREOF, the parties have executed this Amendment Agreement as of the date first above written.

THE CHASE MANHATTAN BANK

By: _____

Name: HENRY J. S. CHEEVER
Title: MANAGING DIRECTOR

WESTERNBANK PUERTO RICO

By: /s/ Hiram Mesonero

Name: HIRAM MESONERO
Title: ASSISTANT VICE PRESIDENT

252451:v01                             2

# AMENDMENT AGREEMENT

This AMENDMENT AGREEMENT is made as of March 1, 2000, between THE CHASE MANHATTAN BANK ("Chase") and WESTERNBANK PUERTO RICO ("Counterparty").

WHEREAS, Chase and the Counterparty are parties to a Master Agreement dated as of February 2, 1996 (as supplemented and/or amended prior to the date hereof, the "Master Agreement") which includes a Credit Support Annex (the "Credit Support Annex") (which supplements, forms part of, and is subject to, the Master Agreement); and

WHEREAS, Chase and the Counterparty desire to amend certain provisions of the Credit Support Annex.

NOW THEREFORE, in consideration of the mutual agreements herein contained, Chase and the Counterparty hereby agree as follows:

1. **Amendment**. Effective as of the date hereof, the Credit Support Annex shall be amended as follows:

    (a) Paragraph 13(h)(i) of the Credit Support Annex is hereby amended to read in its entirety as follows:

    (i) Interest Rate. "Interest Rate" means, for any day, the rate set forth for that day opposite the caption "Federal Funds (Effective)" in the weekly statistical release designated "H.15(519)", or any successor publication, published by the Board of Governors of the Federal Reserve System, minus 1/8%.

2. **Miscellaneous**.

    (a) This Amendment Agreement may be executed in counterparts, each of which will be deemed an original.

    (b) All references in the Master Agreement to the "Agreement" shall refer to the Agreement as defined therein, as amended by this Amendment Agreement.

    (c) All capitalized terms used herein which are not defined herein shall have the meanings set forth therefor in the Master Agreement.

    (d) Except as specifically amended hereby, the Master Agreement shall continue in full force and effect.

252451:v01

(e) THIS AMENDMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO CHOICE OF LAW DOCTRINE.

(f) The headings used in this Amendment Agreement are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting this Amendment Agreement.

IN WITNESS WHEREOF, the parties have executed this Amendment Agreement as of the date first above written.

THE CHASE MANHATTAN BANK

By: _____

Name: HENRY J. S. CHEEVER
Title: MANAGING DIRECTOR

WESTERNBANK PUERTO RICO

By: _____

Name: HIRAM MESONERO

Title: ASSISTANT VICE PRESIDENT