**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**


| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR AM CORE | ) | |
| BANK, N.A.; FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR AMTRUST | ) | |
| BANK; FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR | ) | |
| BANKUNITED, F.S.B.; FEDERAL DEPOSIT | ) | |
| INSURANCE CORPORATION AS RECEIVER | ) | |
| FOR CALIFORNIA NATIONAL BANK; | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR COLONIAL | ) | |
| BANK; FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR | ) | |
| COMMUNITY BANKS OF COLORADO; | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR COR US | ) | |
| BANK, N.A.; FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR DOWNEY | ) | |
| SAVINGS AND LOAN ASSOCIATION, F.A.; | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR | ) | |
| EUROBANK; FEDERAL DEPOSIT INSURANCE | ) | **MOTION TO INTERVENE** |
| CORPORATION AS RECEIVER FOR FIRST | ) | |
| COMMUNITY BANK; FEDERAL DEPOSIT | ) | |
| INSURANCE CORPORATION AS RECEIVER | ) | |
| FOR FIRST FEDERAL BANK OF CALIFORNIA, | ) | CASE NO.: 14 CV 1757 |
| F.S.B.; FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR FIRST | ) | |
| NATIONAL BANK; FEDERAL DEPOSIT | ) | |
| INSURANCE CORPORATION AS RECEIVER | ) | JURY TRIAL DEMANDED |
| FOR FIRST REGIONAL BANK; FEDERAL | ) | |
| DEPOSIT INSURANCE CORPORATION AS | ) | |
| RECEIVER FOR FRONTIER BANK; FEDERAL | ) | |
| DEPOSIT INSURANCE CORPORATION AS | ) | |
| RECEIVER FOR GEORGIAN BANK; FEDERAL | ) | |
| DEPOSIT INSURANCE CORPORATION AS | ) | |
| RECEIVER FOR GUARANTY BANK; | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR | ) | |
| HILLCREST BANK; FEDERAL DEPOSIT | ) | |

INSURANCE CORPORATION AS RECEIVER )
FOR IMPERIAL CAPITAL BANK; FEDERAL )
DEPOSIT INSURANCE CORPORATION AS )
RECEIVER FOR INDYMAC BANK, F.S.B.; )
FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR INTEGRA )
BANK, N.A.; FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR IRWIN )
UNION BANK AND TRUST COMPANY; )
FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR LA JOLLA )
BANK, F.S.B.; FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR LYDIAN )
PRIVATE BANK; FEDERAL DEPOSIT )
INSURANCE CORPORATION AS RECEIVER )
FOR MIDWEST BANK AND TRUST COMPANY; )
FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR ORION )
BANK; FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR PACIFIC )
NATIONAL BANK; FEDERAL DEPOSIT )
INSURANCE CORPORATION AS RECEIVER )
FOR PARK NATIONAL BANK; FEDERAL )
DEPOSIT INSURANCE CORPORATION AS )
RECEIVER FOR PFF BANK & TRUST; FEDERAL )
DEPOSIT INSURANCE CORPORATION AS )
RECEIVER FOR R-G PREMIER BANK OF )
PUERTO RICO; FEDERAL DEPOSIT )
INSURANCE CORPORATION AS RECEIVER )
FOR RIVERSIDE NATIONAL BANK OF )
FLORIDA; FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR SAN DIEGO )
NATIONAL BANK; FEDERAL DEPOSIT )
INSURANCE CORPORATION AS RECEIVER )
FOR SILVERTON BANK, N.A.; FEDERAL )
DEPOSIT INSURANCE CORPORATION AS )
RECEIVER FOR SUPERIOR BANK; FEDERAL )
DEPOSIT INSURANCE CORPORATION AS )
RECEIVER FOR TIERONE BANK; FEDERAL )
DEPOSIT INSURANCE CORPORATION AS )
RECEIVER FOR UNITED COMMERCIAL BANK; )
FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR UNITED )
WESTERN BANK; FEDERAL DEPOSIT )
INSURANCE CORPORATION AS RECEIVER )

FOR WASHINGTON MUTUAL BANK; and ) 
FEDERAL DEPOSIT INSURANCE )
CORPORATION AS RECEIVER FOR )
WESTERNBANK PUERTO RICO )
          Plaintiffs, )
    )
    )
          v. )
    )
    )
BANK OF AMERICA CORPORATION; BANK OF )
AMERICA, N.A.; MERRILL LYNCH & CO.; )
MERRILL LYNCH CAPITAL SERVICES, INC.; )
MERRILL LYNCH INTERNATIONAL BANK )
LTD.; BARCLAYS BANK PLC; BRITISH )
BANKERS' ASSOCIATION; BBA ENTERPRISES )
LTD.; BBA LIBOR LTD.; CITIGROUP, INC.; )
CITIBANK, N.A.; CITIGROUP FINANCIAL )
PRODUCTS, INC.; COOPERA TIEVE CENTRALE )
RAIFFEISEN-BOERENLEENBANK, B.A.; )
CREDIT SUISSE GROUP AG; CREDIT SUISSE )
INTERNATIONAL; DEUTSCHE BANK AG; )
HSBC HOLDINGS PLC; HSBC BANK USA, N.A.; )
THE HONGKONG AND SHANGHAI BANKING )
CORPORATION LTD.; JPMORGAN CHASE & )
CO.; JPMORGAN CHASE BANK, N.A.; BEAR )
STERNS CAPITAL MARKETS, INC.; J.P. )
MORGAN MARKETS LTD. (F.K.A. BEAR )
STEARNS INTERNATIONAL LTD.); J.P. )
MORGAN BANK DUBLIN PLC (F.K.A. BEAR )
STEARNS BANK PLC); LLOYDS BANKING )
GROUP PLC; LLOYDS TSB BANK PLC; HBOS )
PLC; SOCIETE GENERALE; THE )
NORINCHUKIN BANK; ROYAL BANK OF )
CANADA; THE ROYAL BANK OF SCOTLAND )
PLC; THE BANK OF TOKYO-MITSUBISHI UFJ )
LTD.; UBS AG; and PORTIGON AG (F.K.A. )
WESTLB), )
          Defendants. )

Pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure, and for the reasons set forth in the accompanying Memorandum of Law in support of the Motion, intervening Plaintiff respectfully moves for Leave to Intervene as an additional named Plaintiff in the above-captioned action.

## STATEMENT OF RELEVANT FACTS

A complete factual background pertaining specifically to the Intervenors is fully set forth in the Complaint filed in the action, deemed a related case in this matter.

London Interbank Offered Rate ("LIBOR") is a benchmark rate indexed to trillions of dollars in interest-rate swaps and loans that plays a fundamentally important role in financial systems throughout the world. This action is based on the manipulation and suppression of LIBOR. This case involves a certain parcel of real property, commonly referred to as 16042-16148 Vandustrial Drive, South Holland, Illinois ("Vandustrial").

The Vandustrial property includes a multi-unit commercial facility that is rented out to a number of companies doing business in South Holland and the surrounding area. Sharon Sklarov and Val Sklarov ("Sklarovs") holds the beneficial interest in the Trust which holds title to the Vandustrial property. BMO Harris Bank N.A., ("BMO") claims, by virtue of an assignment from the Federal Deposit Insurance Corporation ("FDIC"), to hold a mortgage for Vandustrial.

In 2012, BMO and the Sklarovs reached an agreement pursuant to which the Sklarovs would convey the property to BMO in exchange for a release of all indebtedness due under the mortgage, or in connection therewith, in excess of an agreed upon cap of $30,000. The agreement was negotiated by the parties, with assistance from counsel for the Sklarovs, counsel

for Bayview, and a loan-servicing agent that purported to act as agent for BMO in connection with this transaction.

Pursuant to the parties' agreement, the Sklarovs were to obtain Estoppel Certificates from tenants and provide the status on rents, prepaid rents, and security deposits for such tenants. Pursuant to the parties' agreement, the management company for the property met with and obtained Estoppel Certificates from the tenants, which were then provided to Bayview's counsel pursuant to the Agreement.

Pursuant to the parties' agreement, and at the instruction of the Sklarovs, the sum of $30,000 was also tendered to BMO Harris to be applied as and for the consideration required under the parties' agreement. Bob O'Neill, as counsel for Sharon Sklarov at the time, (who held the power of direction over the Trust) prepared the documents necessary to convey the property to BMO or its nominee, for and in consideration of the aforesaid agreement.

The aforesaid documentation was prepared in a form approved and required by BMO and was tendered to BMO pursuant to the parties' agreement. Notwithstanding its receipt and acceptance of the aforesaid payment, Estoppel Certificates, and documentation—all as required under the parties' agreement—BMO then refused to close at the eleventh hour, demanding that the Sklarovs make additional payments in excess of the amounts previously agreed upon by the parties.

The amounts demanded by BMO on or about October 29, 2012, totaled in excess of an additional $34,000, contrary to the terms of the parties' agreement. Nevertheless, the Sklarovs continued to request specific performance of the agreement.

On March 14, 2014, the FDIC filed a multi-count complaint in the Southern District of New York, Case #14-CV-1757, in part, in its capacity as Receiver of Amcore Bank ("Amcore")

who was the originator of the subject loan against numerous banks of LIBOR, which is also newly discovered information. The FDIC specifically claims that the members ("Panel Bank Defendants") of the United States Dollar LIBOR Panel ("USD LIBOR") fraudulently and collusively manipulated the USD LIBOR and the Panel Bank Defendants engaged in this fraudulent and collusive conduct from August 2007 through at least mid-2011.

Pursuant to the original, First, Second, Third, and Fourth Amended Promissory Notes ("Note"), interest on the subject property/mortgage was required to accrue on the outstanding principal balance of the note at an annual rate equal to the LIBOR rate plus two and one half percent (2.50%).

The subject Promissory Note on this Loan clearly states that if the interest rate violates applicable laws that all interest shall be applied to Principal or a negotiated equitable adjustment thereof. Therefore, pursuant to their own Loan Documents, interest indexed on a LIBOR-based interest rate, which has been alleged to be a fraudulent rate by BMO's predecessor the FDIC (as Receiver for Amcore), the current exaction of interest application and principal reduction on the subject loan has not and cannot currently be determined. Had the interest rate been indexed against a non-manipulated rate it would have completely changed the payment history and the current status of the pending foreclosure. As a proximate cause had BMO exercised the interest rate invalidation provisions due to the manipulation by the Defendant Banks, the complexion of the loan on the subject property would have completely altered/avoided any subsequent foreclosure proceedings.

By submitting and publishing interest rates that were determined by collusion rather than by competition, the Panel Defendants interfered with the competitive process in the markets for money and LIBOR-based financial instruments and artificially increased the prices they charged,

and margins they earned, in those markets, including the markets for interest-rate swaps. Consequently, the LIBOR rate is in violation of existing law. Furthermore, in the Purchase and assumption agreement executed by BMO, as the Assuming Institution for Amcore (which FDIC has filed on behalf of in this suit), the parties represented that the execution, delivery, and performance of the Agreement did not violate or conflict with any law applicable to it. Of note, the Second Amended and Restated Promissory Note ("Second Amended Note") was executed on or about December 1, 2008—during which time the FDIC alleges that the fraudulent manipulation of the LIBOR rate occurred. Based on the foregoing, BMO held a Note which charged a fraudulent interest rate in violation of law. Had Sklarovs been aware of alleged manipulation of the LIBOR rate, they would have chosen a different benchmark interest rate that would have been a more stable or an entirely different loan package all together that would have been indexed against a non-manipulated/damaging interest rate.

Because that interest rate was in violation of law, all payments from 2008 on should have been applied only to the principal, and not to interest, or an equitable adjustment to the interest payments made on a fraudulent rate and a rate determined by competitive and legitimate market forces. Unfortunately, this did not happen. The Sklarovs reasonably relied on the honesty of the affected benchmark rates in undertaking these transactions and holding LIBOR-based financial products. Defendant Banks did not even take the liberty to give notice to the Sklarovs of the alleged violation when they had constructive and actual notice of said manipulation. As a direct and proximate result of the wrongful conduct as described in this Complaint, Sklarovs have been injured in their business and property and have suffered damages in an amount presently undetermined.

Since the rate was based on a fraudulent calculation, all interest payments made based on LIBOR should have been applied to Principal, or equitably adjusted; consequently, because they were not, in violation of the Note and applicable law, BMO is in breach of contract.

## ARGUMENT

**A. Intervention Is Warranted under Federal Rule of Civil Procedure 24(a)**

Federal Rule of Civil Procedure 24(a)(2), which governs intervention as of right, states in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). "The standards governing intervention as of right are well-established." United States v. City of New York, 198 F.3d 360, 364 (2d Cir. 1999). They are: "'[a]n applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" Id. (quoting Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996)).

With respect to evaluation of timeliness, "[w]hile not necessarily an exhaustive enumeration, the following factors should guide the district court's determination:

> (1) the length of time the applicant knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the

> presence of unusual circumstances militating for or against a finding of
> timeliness. United States v. New York, 820 F.2d at 557. In addition, post-
> judgment intervention is generally disfavored because it fosters delay and
> prejudice to existing parties.

Farmland Dairies v. Commissioner of New York State Dep't of Agriculture & Markets, 847 F.2d 1038, 1044 (2d Cir. 1988). Further, "[u]nder Rule 24(a)(2), the proposed intervenor must have a 'direct, substantial, and legally protectable' interest in the subject matter of the action.'" Id. at 365 (quoting Washington Elec. Coop. Inc. v. Massachusetts Mun. Elec. Co., 922 F.2d 92, 96 (2d Cir. 1990)). "In particular, 'intervention . . . cannot be used as a means to inject collateral issues into an existing action.'" Id. (quoting New York News, Inc. v. Kheel, 972 F.2d 482, 486 (2d Cir. 1992)).

"Although there is no clear consensus as to what constitutes an interest under Rule 24(a)(2), the plain language of the rule indicates that the interest must pertain to the property or transaction that comprises the subject of the action." Liz Claiborne v. Mademoiselle Knitwear, 1996 U.S. Dist. LEXIS 8847 (S.D.N.Y. 1996). "A Rule 24 interest must be significantly protectable and direct as opposed to remote or contingent." United States v. New York, 820 F.2d 554, 558 (2d Cir. 1987).

"The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved." Washington Electric Coop., Inc. v. Massachusetts Municipal Wholesale Electric Co., 922 F.2d 92, 97 (2d Cir. 1990). "However, the rule is not intended to allow for the creation of whole new suits by intervenors." Id. Therefore, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Id. (citing H.L. Hayden Co. v. Siemens Medical Sys., Inc., 797 F.2d 85, 88 (2d Cir. 1986)).

Rule 24(b) requires that the intervenor show that his interest in the case would not be adequately represented by one or more of the existing parties. *See* FRCP Rule 24 (a)(2). Generally, "[w]here there is an identity of interest between a putative intervenor and a party, adequate representation is assured." <u>Washington Electric Coop., Inc.,</u> 922 F.2d at 97. Further, it has been held that "a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action." <u>Id.</u>

Further, "[t]he proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as parens patriae." <u>United States v. City of New York,</u> 198 F.3d 360, 367 (2d Cir. 1999) (citing <u>United States v. Hooker Chems. & Plastics Corp.,</u> 749 F.2d 968, 985 (2d Cir. 1984)). Representation cannot be considered inadequate "simply because 'the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief,' or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy. <u>Id</u>. (quoting <u>Hooker Chems. & Plastics Corp.,</u> 749 F.2d at 985; citing <u>Orange Env't Inc. v. County of Orange,</u> 817 F. Supp. 1051, 1061 (S.D.N.Y.), aff'd, 2 F.3d 1235 (2d Cir. 1993).

"There is little likelihood that novel issues of law will be determined that will have the effect of stare decisis, an element which at least one court has found sufficient to require intervention of right." <u>Ionian Shipping Co. v. British Law Ins. Co</u>., 426 F.2d 186, 191 (2d Cir. 1970).

Plaintiff satisfies each element of the four-part test for determining when intervention as of right under Rule 24(a) is warranted.

(1) Plaintiff's Motion is Timely

"A motion for permissive intervention [under Fed. R. Civ. P. 24(b)] must be timely." <u>In re Initial Pub. Offering Sec. Litig.</u>, 499 F. Supp. 2d 415, 417-418 (S.D.N.Y. 2007). "'A district court has broad discretion in assessing the timeliness of a motion to intervene, which defies precise definition.'" <u>Id</u>. at 418 (quoting <u>United States v. Pitney Bowes, Inc.</u>, 25 F.3d 66, 70 (2d Cir. Conn. 1994)). "In analyzing timeliness, '[t]he court may consider, inter alia, the following factors: (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention. Generally, the court's analysis must take into consideration the totality of the circumstances.'" <u>Id</u>. However, '[t]he principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" <u>Id</u>. Here, the instant motion is being submitted soon after the Complaint was filed on March 17, 2014, reviewing which, the Plaintiff made the decision that intervention in this Action was necessary to protect their interests. Moreover, there will be no prejudice to the existing parties if Plaintiff is allowed to intervene. Allowing intervention will also benefit all parties and preserve judicial resources.

(2) Plaintiff asserts an Interest in the Transaction that is the subject of the Action. Plaintiff has a direct interest in the litigation. Plaintiff relied on the credibility of the LIBOR rates and entered into transactions resulting in damages.

(3) Disposition of the action may impair or impede Plaintiff's ability to Protect its interest The LIBOR based interest rate on Plaintiff's mortgage for Vandustrial was artificially manipulated both downwards and upwards in violation of existing law. But for the manipulation

of the rate the Sklarovs would never have entered into this transaction. As a result, all payments from 2008 onwards were not applied to the principal but to the interest.

(4) Plaintiff's interest is not adequately represented by other parties.

Finally, intervention as of right is appropriate because Plaintiff's interests are not adequately represented by other parties to this action. "[T]he burden to demonstrate inadequacy of representation is generally speaking minimal." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001) (internal quotations omitted). The action as currently styled cannot be presumed to adequately represent the interests of Plaintiff.

Because it satisfies the criteria for intervention as of right, Plaintiff/Intervenor asks this Court to permit it to intervene as a Plaintiff. While Fed. R. Civ. P. 24(c) requires the filing of a pleading identifying the claims for which intervention is sought; in this case, Plaintiff seeks to intervene to protect certain claims which are already included in the Complaint. Accordingly, should intervention be granted, Plaintiff proposes additions to the existing Complaint which essentially reflect Plaintiff's interests in the action.

## B. In the Alternative, Plaintiff Should Be Permitted to Intervene.

Even if a party is not entitled to intervene as of right, the court may still permit it to intervene if that party has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). **"Permissive intervention pursuant to Rule 24(b) 'is discretionary with the trial court.'"** Citizens Against Casino Gambling v. Hogen, 417 Fed. Appx. 49, 50 (2d Cir. 2011) (quoting H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986). Thus, "[p]ermissive intervention is chiefly a matter committed to the broad discretion of the court. United States v. Columbia Pictures Industries, Inc., 88 F.R.D. 186, 189 (S.D.N.Y. 1980).

"In exercising its discretion, the court must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" Id. (quoting H.L. Hayden Co. of N.Y., 797 F.2d at 89; Fed. R. Civ. P. 24(b)). It has been held that "undue delay or prejudice is the 'principal consideration' in determining whether intervention is appropriate." Id. (quoting U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978)). Further, "a threshold consideration under Rule 24(b), as under Rule 24(a), is timeliness." United States v. Pitney Bowes, Inc., 25 F.3d 66, 74 (2d Cir. 1994).

"Additional relevant factors include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." Id. (quoting U.S. Postal Serv., 579 F.2d at 191). See also In re Holocaust Victim Assets Litig., 225 F.3d 191, 202 (2d Cir. 2000) ("A district court may grant a motion for permissive intervention if the application is timely and if the applicant's claim or defense and the main action have a question of law or fact in common. The court must consider whether granting permissive intervention will unduly delay or prejudice the adjudication of the rights of the existing parties."). Further, "[another] ground for intervention is economic interest." Brooks v. Flagg Bros., Inc., 63 F.R.D. 409, 415 (S.D.N.Y. 1974).

Finally, "[p]ermissive intervention may be granted 'when an applicant's claim or defense and the main action have a question of law or fact in common.'" AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561-562 (2d Cir. 2005) (citing Fed. R. Civ. P. 24(b)). "[Permissive] intervention under Rule 24 is the proper mechanism for a non-party to seek modification of a protective order and thus to gain access to information generated through judicial proceedings." United States v.

<u>Alex. Brown & Sons, Inc</u>., 169 F.R.D. 532, 537 (S.D.N.Y. 1996). This standard is easily satisfied as Plaintiff's claims relate to injuries arising out of fraudulent LIBOR rates, a question that is at the heart of this case.

Generally, "[a] party seeking to intervene in an action must show that the representation of its interests may be inadequate. The burden of making that showing 'should be treated as minimal.'" <u>CBS, Inc. v. Snyder</u>, 136 F.R.D. 364, 368 (S.D.N.Y. 1991) (quoting <u>New England Petroleum Corp. v. Federal Energy Admin.</u>, 71 F.R.D. 454, 458 (S.D.N.Y. 1976). Further, "[t]he burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention." <u>Id</u>. This presumption of adequate representation may be overcome by a demonstration of collusion, nonfeasance, or incompetence. <u>Kamerman v. Steinberg</u>, 681 F. Supp. 206, 212 (S.D.N.Y. 1988), aff'd, 891 F.2d 424 (2d Cir. 1989). Here, the facts of the case Plaintiff seeks to intervene in show on the face that collusion occurred relative to Plaintiff's interests. Therefore, in the alternative, Plaintiff asks that it be permitted to intervene under Federal Rule of Civil Procedure 24(b)(1)(B).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant their motion to intervene as Plaintiff as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissively, pursuant to Federal Rule of Civil Procedure 24(b)(2)(B).

Dated this 10 day of October, 2014.



Respectfully Submitted,


/s/ Art A Budyonny, Esq.

Budyonny Law Group
180 East Prospect Avenue
Suite 135
Mamaroneck, NY 10543

Tel:  (914) 902-8094
Fax: (914) 992-8700

artb@blgpllc.com

Attorneys for Proposed
Plaintiff-Intervenor

**CERTIFICATE OF SERVICE**

This is to certify that on this 10 day of October, 2014, a true and correct copy of the

MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR-Plaintiff's

MOTION TO INTERVENE was filed via the Court's ECF system which shall send notice to all

counsel of record via electronic mail.

/s/ Art A Budyonny, Esq.